UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Eugene Sonnier, II

versus

Roman Catholic Diocese of
Lafayette, et al.

Civil Action No. 6:16-CV-1229

Judge Rebecca F. Doherty

Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Pending before the Court are: (1) a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendants, Society of the Roman Catholic Church of the Diocese of Lafayette, Bishop Emeritus C. Michael Jarrell, Bishop Emeritus of Lafayette, and Father Brian Taylor (collectively "Defendants") (Doc. 4.); (2) a Memorandum in Opposition, filed by Plaintiff Eugene Sonnier, II (Doc. 12); and (3) Defendants' Reply (Doc. 15).  For the following reasons, the undersigned recommends that Defendants' motion be granted.

### I. Background

Plaintiff alleges in the complaint that he participated in a hearing where he learned that Father Taylor, the priest of St. Geneviere Catholic Church, had expressed concern about Plaintiff using the confessional to communicate with individuals involved in a civil litigation matter.  (Doc. 1 at ¶ 4.)  Plaintiff further states that:

> A foundation doctrine in the Roman Catholic Church for thousands of years mandates that the seal of confession is absolute and inviolable.
>
> Pursuant to his oath to the Church, a priest is compelled never to break that seal.
>
> Neither is a priest allowed to admit that someone went to confession to him.
>
> This is not a gray area in the doctrine of the Roman Catholic Church and a priest who violates the seal of Confession incurs an automatic excommunication.
>
> The standard of secrecy protecting a confession outweighs any form of professional confidentiality or secrecy.  When a person unburdens his soul and confesses his sins to a priest in the Sacrament of Penance, a very sacred trust is formed.  The priest must maintain absolute secrecy about anything that a person confesses.

(Doc. 1 at ¶¶ 6-10.)

On August 29, 2016, Plaintiff filed this civil action against Defendants.  (Doc. 1.)  Plaintiff asserts that Father Brian Taylor violated Plaintiff's First Amendment rights when he "disregarded the sacramental seal and informed other individuals [without express permission] that he believed [Plaintiff] was using the confessional as a guise."  (Doc. 1 at ¶ 4-5, 12.)  Plaintiff further asserts that Bishop Jarrell contributed to the invasion of Plaintiff's privacy by failing to remedy Father Taylor's conduct after he learned of Father Taylor's violation of the sacramental seal of confession.  (Doc. 1 at ¶ 15, 17.)  Plaintiff sues the Society of the Roman Catholic

Church of the Diocese of Lafayette under a theory of *respondeat superior*.  (Doc.  1 at ¶ 28.)

In addition to his First Amendment claims, Plaintiff asserts state law claims against the Defendants on the basis of their "negligence, malice, and/or intentional conduct."  (Doc. 1 at ¶ 27.)   Plaintiff seeks compensatory damages as well as "[t]reble, exemplary and /or punitive damages against Defendants."  (Doc. 1 at ¶ 33.) Defendants move to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (Doc. 4.)

### III.  Discussion

### A.    Motion To Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  The plaintiff has the burden of establishing subject matter jurisdiction, and the Rule 12(b)(1) motion "should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."  *Hall v. State of Louisiana*,

3

983 F. Supp. 2d 820, 828 (M.D. La. Sep. 30, 2013) (citing *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming*, 281 F.3d at 161. The court must accept all well-pleaded facts set forth in the complaint as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Conclusory allegations and unwarranted deductions of fact, however, are not accepted as true. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In addition, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," *Id. at 555,* and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," *Id.* "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

## B.    *Defendants' Motion to Dismiss*

### 1.    *Federal Question Jurisdiction*

In their motion to dismiss, Defendants contend that there is no federal question jurisdiction because "Plaintiff's well-pleaded allegations do not demonstrate the existence of a 'state actor' or 'state action.'" (Doc. 4-2 at p. 3.)  Plaintiff responds that the Court has federal question jurisdiction because the First Amendment applies to torts involving the invasion of privacy and defamation.  (Doc. 12 at pp. 2-6.)

Plaintiff alleges claims arising out of the First Amendment.  The civil remedy for violation of an individual's constitutional rights, including First Amendment rights, is set forth in 42 U.S.C. § 1983.  This section provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

Section 1983 was promulgated to prevent ". . .[a government official's] [m]isuse of power, possessed by virtue of state law and made possible only because the [official] is clothed with the authority of state law." *Johnston v. Lucas,* 786 F.2d 1254, 1257 (5th Cir. 1986); *Whitley v. Albers,* 475 U.S. 312 (1986); *Davidson v. Cannon,* 474 U.S. 344 (1986).   Only two allegations are required to state a cause of action under 42 U.S.C. § 1983.  "First, the Plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Manax v. McNamara,* 842 F.2d 808, 812 (5th Cir. 1988).

Private entities and individuals are "not clothed with the authority of law to act on behalf of the state, and as such, [they are] not subject to suit under § 1983." *Reid*

*v. Pope Beneduct XVI*, No. CC-07-433, 2008 WL 179268, *2 (S.D. Tex. Jan. 18, 2008) (citing *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (recognizing that private individuals or citizens are not liable under § 1983 unless the plaintiff alleges and proves the existence of an agreement between private and public parties to commit an illegal act that results in the deprivation of constitutional rights). Plaintiff's allegations and claims in this case are against private rather than state actors and are not predicated on any state action.  Because Plaintiff fails to allege a violation of a constitutional right by a state actor, his claims are subject to dismissal for failure to state a claim for relief.  *See Reid*, 2008 WL 179268 at *2.

In order to demonstrate the existence of federal question jurisdiction, Plaintiff argues that his invasion of privacy and defamation claims necessarily arise from the First Amendment.  Plaintiff cites  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), for the proposition that the First Amendment mandates a constitutional privilege applicable to torts of defamation and invasion of privacy.   In *Cox Broadcasting*, the plaintiff brought a state court claim of invasion of privacy against a broadcasting company arising out of the publication of a rape victim's name.  *Id.* at 472-74.  The broadcasting company admitted the publication  but asserted that it was privileged under both state law and the First and Fourteenth Amendments.  *Id.* at 474.

7

The Court finds that *Cox Broadcasting* is distinguishable from the present case in that: (1) Plaintiff's claims of invasion of privacy and defamation are not being asserted against a media or publishing company; and (2) Defendants in this case are not asserting by way of defense a First Amendment constitutional privilege.  Plaintiff cites additional cases that are likewise distinguishable legally and factually from the present case.  *See Cantrell v. Forest City Publishing, Co.*, 95 S. Ct. 465, 467-68 (1974) (involving a state law claim of invasion of privacy brought in federal court based on diversity against a publishing company); *Time, Inc. v. Hill*, 87 S. Ct. 534, 537-38 (1967) (consisting of a state law invasion of privacy claim brought in a New York state court where the defendant publishing company asserted in defense its First Amendment right to free speech and freedom of the press); *McIntyre v. Gilmore*, No. 15-282, 2015 WL 2250210, at *1 (involving state law claims of defamation and false light invasion of privacy brought in federal court based on diversity jurisdiction).

The Court agrees with Defendants that Plaintiff has conflated state law claims of defamation and invasion of privacy with the First Amendment privilege that the media and publishers enjoy by virtue of their First Amendment right to free speech and freedom of the press.  The fact that a publisher or media company has a First Amendment constitutional privilege that can be used as a defense to state law defamation and invasion of privacy claims does not mean that such claims arise under the First Amendment against non-state actors.  Furthermore, there is nothing in the

First Amendment to create a private cause of action for either defamation or invasion of privacy.  Accordingly, because no federal question jurisdiction exists in the present case, Defendants' motion to dismiss is due to be granted.

### 2.    *Subject Matter Jurisdiction*

Even if Plaintiff could establish federal question jurisdiction, Defendants contend that this Court lacks subject matter jurisdiction to consider Plaintiff's claim on the basis that "Plaintiff's attempt to have a secular court interpret and adjudicate matters of Roman Catholic Church doctrine is improper and violative of both the United States and Louisiana constitutional protections."  (Doc. 4-2 at pp. 4-7.) Plaintiff responds that this Court has subject matter jurisdiction over his claims because Father Taylor's actions went beyond the scope of an internal religious matter and, therefore, outside the scope of the First Amendment's protections.  (Doc. 12 at pp. 6-9.)

The First Amendment provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."  U.S. Const. amend. I.  Government action illegally burdens the free exercise of religion by encroaching on the church's ability to manage its internal affairs.  *See Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952); *Watson v. Jones*, 80 U.S. 679, 727 (1872); *Cannata v. Catholic Diocese of*

*Austin*, 700 F.3d 169, 172 (5th Cir. 2012).  "This right includes the freedom "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'"  *Cannata*, 700 F.3d at 172 (quoting *Kedroff*, 344 U.S. at 116)).

It is a core tenet of First Amendment jurisprudence that, in resolving civil claims, courts must refrain from intruding upon internal matters of church governance.  In *Watson*, the Supreme Court eloquently explained this principle as follows:

> The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned.  All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it.  But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed.  It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

*Watson*, 80 U.S. at 728-29.

Consistent with the First Amendment, Article 1, Section 8 of the Louisiana Constitution also affords protection to churches and their clergy against

10

encroachment on religious freedom by the Louisiana Constitution.  *Glass v. First Pentecostal Church of DeRidder*, 676 So. 2d 724, 728 (La. App. 3d Cir. 1996).  "This prohibition extends to matters of religious freedom, faith, or custom, as well as to the appointment and removal of ministers."  *Id.*  "However, there are limits to this prohibition, and in those cases where religious doctrine is not involved, or may be deferred to, civil courts retain the power to resolve disputes."  *Glass*, 676 So. 2d at 728.

Plaintiff relies primarily on *Gorman v. Swaggart*, 524 So. 2d 915, 922 (La. App. 4th Cir. 1988), to argue that the religious protections guaranteed by the First Amendment and the Louisiana Constitution do not cover claims outside the scope of internal religious matter.  (Doc. 12 at p. 7.)  In *Gorman*, plaintiff Marvin Gorman brought suit "to recover damages for defamation libel, invasion of privacy, and intentional infliction of emotional distress from Jimmy Swaggart and thirteen other defendants."  *Gorman*, 524 S.2d at 916-17.  In the wake of accusations of immoral conduct, Gorman voluntarily resigned and was subsequently dismissed from his position as a minister of the Assemblies of God.  *Id.* at 917.  After his separation, defendants continued to make accusations against Gorman which were made known to the congregation of Gorman's former church.  *Id.* at 917-18.

11

The Louisiana appellate court in *Gorman* addressed whether First Amendment protections of religious freedom barred Gorman's tort claims from consideration. *Id.* at 921-23. The *Gorman* court held that "the civil courts of Louisiana have subject matter jurisdiction over" Gorman's lawsuit, concluding that:

> Gorman's suit alleges defamatory acts which occurred outside the Assemblies of God after he had resigned as a member of that denomination and been formally dismissed as one of its ministers.
>
> We have been presented with no plausible argument to justify these allegedly defamatory actions as part of internal church discipline. Moreover, even were we to find that the defendants' post-dismissal statements were legitimately part of internal church discipline, there is a serious question as to whether the First Amendment's protection would extend to those statements allegedly made to the press, the general public and pastors of other denominations. In our opinion, these allegations take the case beyond the scope of an internal religious matter. This court may be powerless to interpret the religious doctrine which defendants claim compelled them to publicize their accusations to other members of their church, however, this does not mean they can make those accusations outside their church and not face the legal consequences.
>
> Neither the United States or the Louisiana Constitution provides religious organizations or their members with unqualified blanket immunity from the civil consequences of potentially defamatory statements. To the extent that the Assemblies of God interprets scripture and its own internal rules to require disclosure of Swaggart's accusations against Gorman to its members as part of the disciplinary process, civil courts may be precluded from interfering, even if the accusations appear to be false or defamatory. However, by taking their accusations outside their church, the defendants have also taken themselves outside the scope of the First Amendment's protection and, to that extent, have exposed themselves to the jurisdiction of the civil courts.

*Id.* at 922.

The Court finds that *Gorman* is distinguishable from the present case.  Unlike the allegations presented in Plaintiff's complaint, the *Gorman* case involved state law tort claims by a minister against his former church pertaining to accusations made after the minister was no longer associated with the church.  The alleged defamatory or harmful accusations, therefore, were not part of the church's internal affairs or disciplinary process.  Furthermore, Plaintiff's allegations in this case indicate that Father Taylor disclosed Plaintiff's use of a confession in connection with a legal proceeding.  In contrast to *Gorman*, Plaintiff makes no allegations that the contents of his confession were disclosed either to the press or to the general public.  *See Glass* 676 So. 2d at 732-33.

The undersigned finds that Plaintiff's claims fall within the scope of internal religious affairs as they are predicated on: (1) the breach of the sacramental seal of confession, as defined by the Roman Catholic Church; and (2) Bishop Jarrell's failure to remedy the breach in accordance with church doctrine.  In order to discern whether Plaintiff has asserted meritorious claims against Defendants, the Court would have to interpret church doctrine relating to the sacrament of confession and otherwise encroach upon the internal affairs of the Roman Catholic Church.  Application of long-standing First Amendment jurisprudence, therefore, mandates that this Court

refrain from considering Plaintiff's claims.  Accordingly, Plaintiff's complaint also is subject to dismissal for lack of subject matter jurisdiction.

### IV. Conclusion

Based on the foregoing reasons, the undersigned RECOMMENDS that Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 4) be GRANTED for lack of federal question jurisdiction and/or subject matter jurisdiction, and that Plaintiff's claims against Defendants be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within FOURTEEN (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except

upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th  Cir.1996).

      **THUS DONE AND SIGNED** at Lafayette, Louisiana, this 18th day of January, 2017.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

15